ELIZABETH S. FISHER and LUCRETIA S. FISHER *v.* GIDEON QUICK, JACOB F. QUICK and JOHN QUICK, Executors of JOHN QUICK, deceased, and others.

P., by will, gave one-fourth of his personal estate to Q., in trust for P.'s granddaughter, M. F., a daughter of Q., to be paid to her by the said Q. as her necessities might require. The amount of the trust fund received by Q. was $2,094. Q. bought a house and lot, for $2,500, and took a deed for it to himself; and M. F. and her family lived in it three years, with Q.'s permission, and without paying him rent. During the time Q. expended $500 in repairing the house. After M. F. and her family left the house, Q. expended $522 more in repair. After the death of F., Q. sold the property for $3,000. Q. rendered a trust account based on the principle of charging the trust fund with the loss consequent upon the purchase of the said property.

*Held :* that he was not entitled to do so.

*Held, further :* that, on the death of M. F., the said trust fund belonged to her children.

This cause was decided at the December term, 1850.

The bill, filed March 25th, 1847, states, that Peter Prall died, March 2d, 1829, leaving a will, by which, after devising his real estate, and giving a number of specific and pecuniary legacies, he gave all the residue of his personal estate as follows : to his grandson, Peter P. Quick, one-fourth ; to the three sons of his grandson, Gideon Quick, one-fourth; to his granddaughter, Fanny Wiggins, one-fourth ; and the remaining fourth to his son-in-law, John P. Quick, in trust for the use, benefit and support of his granddaughter, Mary Fisher, to be paid to her by the said John P. Quick as her necessities may require ; and appointed his son Abraham Prall, his son-in-law John P. Quick, and his grandson Peter P. Quick, executors.

That John P. Quick and Peter P. Quick proved the will.

That by the final accounts of said two executors who proved the will, allowed by the Orphans' Court of Hunterdon, in February, 1831, a balance of personal estate, after paying debts, testamentary expenses and legacies, was found remaining in their hands, of $8,717.15 1-2.

That said John P. Quick, on or about April 1, 1830, received the fourth of said residue, $2,179.28, in trust for said Mary Fisher; and that said John did, during the life of said Mary, from time to time, pay to her small sums of money, towards her support, on account of said trust fund; but the whole of said payment did not, as the complainants have been informed and believe, amount to as much as the lawful interest of the said fund.

That the said Mary Fisher died intestate, February 6, 1835, leaving six children, namely, Catharine M., wife of Cortenus S. Young, Peter F. Fisher, Fanny Fisher, Israel Fisher and the complainants.

That said Fanny Fisher died, December 6th, 1843, intestate and without issue.

That said John P. Quick died, December 29th, 1845, leaving a large real and personal estate, and leaving a will, of which he appointed his son Gideon Quick and his grandsons Jacob F. Quick and John Quick, executors, who all proved his will.

That the complainants are informed, and believe, that the said John P. Quick, the said trustee, in his life time, and after the death of the said Mary Fisher had a settlement of some kind with the said Cortenus S. Young, in right of his said wife, Peter F. Fisher and Israel Fisher, for and on account of the shares of said trust fund to which they became entitled on the death of said Mary Fisher; but what the nature and terms of such settlement were, the complainants do not certainly know.

The bill prays, that the said defendants the executors of John P. Quick may account for the moneys and effects which came to the hands of said John P. Quick in trust for the said Mary Fisher, under the said will of Peter Prall, deceased; and that the defendants Cortenus S. Young and Catharine his wife, P. F. Fisher and Israel Fisher may set forth whether the said John P. Quick, in his life time, ever accounted with them or either of them; and that said two-sixths of the clear residue of said trust fund at the death of Mary Fisher, with the interest which has since accrued thereon, may be decreed to be paid by the said

executors of John P. Quick to the complainants; and for such other and further relief &c.

The answer of the executors of John P. Quick states, that they have always been willing to pay to the complainants the two sixths parts of the principal of said trust fund, after deducting the payments made to their mother, and which, these defendants aver, they have always heard from the said John P. Quick he intended to pay them, had he lived until they, respectively, attained twenty-one, or else to give them the same amount some other way; and that he has so paid in full all the other children of the said Mary Fisher, deceased, who arrived at twenty-one before his decease. But not because he considered himself compelled so to do, but because the said children of the said Mary were his grandchildren, and he was willing and anxious, and always intended they should have that amount in some way, either by his will or otherwise, besides what he intended to leave them out of his other estate. But these defendants deny, that they are legally or equitably bound to pay the said two sixth parts of the said residue; and allege, that they, as well as the said John P. Quick, in his life time, were always informed, that whatever sum might remain of said bequest to him, after being applied as directed by the will of Peter Prall towards the support of the said Mary Fisher as her necessities might require, belonged to him absolutely.

They say, that the said Mary was the wife of one Amos Fisher, who was in good health and vigorous constitution, and that, some time in 1829 and 1830, prior to the settlement of the estate of said Peter Prall, and before the said John P. Quick had received so much as $100 of the said trust fund, as appears by accounts found among his papers since his death, she and her said husband and his friends all became anxious that the said John P. Quick should apply the residue of the said trust fund which then remained towards the purchase of a certain tavern property in New Brunswick, which the said Mary and her husband wished to occupy; urging and insisting, that the application of the said fund in this way would be more advantageous to the said Mary

and her family than in any other way; that it would afford the said Amos an opportunity to apply his personal labor and attention in a profitable way towards making a support for his family; and urging, that the said property was then offered at a very low rate; and stating, that the deed therefor could be taken in the name of said J. P. Quick, which would always afford a security for the safety of the fund.

That said J. P. Quick, at first strongly objected to said purchase, fearing that some difficulty might grow out of it, and declined making said investment, as he was getting in years, and the property lay some twenty-five miles from his residence.

But upon the repeated solicitations of his daughter, and being urged by the friends and connections of the said Amos, as well as by the said Amos and his wife, and being desirous to gratify his daughter, he finally permitted himself to be taken, by one of the brothers of said Amos, to look at the said property, and finally, by the persuasion of his said daughter and friends, reluctantly consented to the purchase of said property with the said trust fund as aforesaid. That he bought said property for $2,500, then considered a very low price, but being near $500 more than came to his hands of the said trust fund, after what he had then paid to the said Mary Fisher; and took the deed in his own name, dated February 28th, 1830.

That said property was then considerably out of repair, and required considerable expenditure to put it in order for the use of his said daughter and her husband and the family.

That in the winter or spring of 1830, the said Amos, with his family, moved into the said tavern property, where they remained until about May 1, 1833, without accounting to said J. P. Quick for any rent.

That, within a year after they moved into the said house, J. P. Quick paid $500 for repairs to the said property, making, in all, $1,000 more invested in said property than the amount of said trust fund.

That, in the last year during which said Amos and his family occupied said property, as these defendants have been informed and believe, the health of the said Mary somewhat declined, and

the custom fell off, the said Amos not proving himself very efficient in the prosecution of his business; and the said Mary became satisfied that it was not profitable longer to keep a public house, and determined to abandon the same, and did, with her husband and family, leave the said property about May 1, 1833, when they obtained the consent of the said J. P. Quick to rent said tavern to one Huff, for $225 a year; and that the property was rented to said Huff, at the request of said Amos Fisher and wife, by the said J. P. Quick; and they rented a smaller and less expensive tenement, to which they removed, and which they continued to occupy until the death of said Mary, as these defendants have been informed.

That Huff failed, and ran away, early in 1834, leaving, as they have understood and believe, some part of the rent unpaid; after which the said house remained some time unoccupied, until afterwards rented by one Strong.

That these defendants have been informed, that said Huff never accounted to said J. P. Quick for any rent for said property, but that whatever he paid he accounted for to said Mary Fisher and her said husband, but to what amount they are not able to state. And they allege, that said J. P. Quick never received any rent for said property during the life of the said Mary; but that, after having purchased it for her benefit and at her request, he left the management of it to her and her husband so long as she lived, and permitted her to take the profits thereof.

That they have been informed and believe, that, some time in August, or September, 1834, the said Strong rented and moved into said tavern house, and remained until it was sold, on the 1st of May, 1836, and who, after the death of said Mary, paid the rent thereof to said J. P. Quick, at the rate of $225 a year.

They allege, that, on the 19th of June, 1835, a tornado swept over New Brunswick, whereby the said property was so much injured, that said J. P. Quick was compelled to, and did pay $522.70 for the repairs necessary to be made before the property could be sold, or in any way profitably disposed of.

That, during the life of said Mary, she was opposed to the

sale of said property, because it was renting for a sum over and above the interest on the cost of it. But, as soon as said Mary died, the said J. P. Quick was desirous to sell said property, and offered the same, but was not able to effect a sale of it until September, 1835, when he sold it to J. D. Scough, for $3,000, the highest price he could get for it, to be paid on the 1st of May then next.

That these defendants have been informed and believe, that, after the death of the said Mary, and after some of her children had attained twenty-one, about the 1st of March, 1841, the said J. P. Quick made a statement of his accounts as trustee as aforesaid, and which he then filed in the Surrogate's office of Hunterdon, which account was based on the position that said property was purchased for the benefit of the said Mary, and that whatever loss had occurred thereon was to be borne by the said trust fund; but which has since been mislaid or lost, and cannot be found. That they find among the papers of said J. P. Quick, a paper which, they are informed and believe, is a copy of the same, and which is as follows : (it is set out) : which said account is based on the principle of charging said trust fund with the loss consequent upon the purchase of said property, and of which, these defendants allege, the said J. P. Quick informed said heirs at the time of his several settlements with them, respectively, as after mentioned.

That, after filing said account in the Surrogate's office, the said J. P. Quick proceeded to settle with four of the children of of said Mary Fisher, who arrived at twenty-one before his death ; and after having presented them the said copy of said account, with no item of which either of them found any fault, he settled the same with each, and took their discharges in full.

That in and by the will of the said Peter Prall it is directed, if any of his legatees should die without having received the legacy bequeathed to them, leaving heirs under twenty-one, that then his executors should place the share of such heirs at interest, and pay the same, with the interest thereon, to them as they, respectively, attained twenty-one.

That, since the death of said J. P. Quick, and on the 11th of

July, 1846, they caused the said sum of $183.27, with the interest thereon from May, 1841, to be tendered to the guardian of Elizabeth Fisher, one of the complainants, and that he refused to accept it. The answer states, also, a tender to the said Elizabeth after she attained twenty-one, and that she refused to accept the said sum.

They say they are informed and believe, that, shortly after the death of said Mary Fisher, the said J. P. Quick made a will, by which he bequeathed a considerable sum of money to the heirs of the said Mary Fisher on account of what remained in his hands unexpended of the said trust estate, under the impression and belief, that they had no right to call upon him to account for the same, but intending that they should, notwithstanding, have the benefit thereof; and when, therefore, afterwards, and shortly previous to the settlement with part of the heirs, in 1841, those of them who had attained twenty-one expressed some dissatisfaction, and desired a settlement of said trust fund, and payment of their shares, the said John P. Quick, without objection, made the settlement and payment above stated; which they all appeared to acquiesce in, until after the death of said John P. Quick.

They say, that, in and by the last will of the said John P. Quick, among other things, he bequeathed the sum of $2,000 to be equally divided among his said grandchildren, the children of the said Mary Fisher, in one year after his decease, as they arrived at age.

They allege that they are informed and believe, that, shortly after the said settlement with the heirs above mentioned, in the spring of 1841, the said John P. Quick made and executed a will in which, recollecting the recent dissatisfaction of said heirs in reference to the said trust fund, he left the said sum of $2,000 to be distributed among the said children of the said Mary Fisher, upon the express condition only, that they should make no disturbance in regard to said trust fund, and that if any of them should make any difficulty in regard thereto, or attempt to recover any larger sum than appeared to be due by the said account, such children should lose the benefit of said bequest.

But that, afterwards, finding they all acquiesced in said settlement for so long a time, and the principle and details of said settlement having been recognized and consented to, at so many different periods, by four out of the six of said heirs, in their several settlements, when he came to execute his last will above mentioned, he remarked to the scrivener who prepared the said last will, that that prohibitory clause might as well be omitted, at the same time giving as a reason, that it was not now necessary, because said children were perfectly satisfied with the adjustment of said trust estate; in consequence of which, said prohibitory clause was omitted in said last will.

That, at the time of filing the said account, the said James P. Quick had, as they have been informed and believe, receipts and vouchers for each and every charge against said trust estate contained in said account; but, believing the same to be ended, and no further question ever likely to arise concerning the same, as appeared from the acquiescence of all parties concerned, he became less careful of said vouchers, or by some means some of them have been mislaid and cannot be found by these defendants; but which payments they hope to be able mainly to supply by parol proof.

They insist, that by the terms of the bequest in said Prall's will to James P. Quick in trust for the use, benefit and behoof of said Mary Fisher, neither the said James P. Quick, nor these defendants as his executors, are liable to pay any interest on said trust fund during the life of said Mary, even if her heirs are entitled to the surplus of said fund remaining unexpended after her death; because by said will the said trust fund was placed at his discretion, to apply as he thought proper, and, besides, was contemplated constantly to remain in his hands to answer present necessities of the said Mary.

And they further insist, if in the opinion of the Court the said heirs should be considered as entitled to any larger residue of said trust fund than appears due them by said account, that they should not be permitted to take the said legacy of $2,000, bequeathed to them by the last will of said James P. Quick, because the said bequest was made expressly upon the condition,

42

that they should receive no larger amount out of said trust fund than appeared due by said account; or, at least, they should be decreed to surrender so much of said legacy as they may recover out of said trust fund over and above what appears due them, respectively, by said account.

They insist, that the present is a stale claim, and ought, if at all; to have been prosecuted during the life of said James P. Quick, and not to have been left to sleep so many years and until after his death, &c.

The defendants Young and wife, Peter P. Fisher and Israel Fisher put in an answer, in which they say, that, after the death of said Mary Fisher, they applied to said James P. Quick, and demanded, that he should render to them an account of said trust fund, and of the payments out of the same, and pay them their respective shares of the residue. That said James P. Quick at first refused to pay anything, pretending that there was little or no surplus. That he always refused to render any account of said trust fund, and of the payments of the same.

That, after such refusal to account or to pay, he stated to them, that he would pay them their shares if they would give him receipts in full, and assured them that $180, or thereabouts, the precise sum they do not now recollect, was the full amount of each sixth part. And these defendants, being the grand-children of said James P. Quick, and confiding in his representations, were induced to accept the said sum, each. And, on the receipt of that sum, they believe they gave receipts in full.

They say, they believe they have not received all they should have received, and ask, that what may be equitable may be decreed.

They join in the prayer of the bill, that an account may be taken; and that they may be paid their respective shares of said fund after deducting the said payment received by them, respectively.

Testimony was taken on both sides.

*Field* and *Hageman* for the complainants. They cited 19 *Ves.* 416 ; 2 *Roper on Legacies,* 40, 41, 342 ; *Hill on Trustees,* 377, 382, 489, 527, 577 ; 1 *Ves. Sen.* 263 ; 4 *Ves.* 483 ; 1 *Green's Ch.* 1 ; 4 *Wend.* 449 ; 12 *Ib.* 68 ; 8 *Beam & Roe,* 397 ; 14 *Wend.* 449 ; 12 *Ib.* 68.

*W. Halsted* and *P. D. Vroom* for the defendants. They cited 3 *Swanst.* 64 ; 1 *Russell & Mylne,* 535 ; 2 *Roper on Leg.* 37 ; 2 *Story's Eq. Jur.* sec. 1109, 1111 ; 4 *Harr. N. Y. Rep.* 109 ; 1 *Pick.* 530 ; 13 *Mass.* 232 ; 18 *Pick.* 1, 7 ; 11 *Ib.* 371 ; 6 *Halst. Rep.* 44 ; 3 *Mad. Rep.* 396 ; 2 *Ves. Sen.* 87, 9 ; 16 *Ves.* 27 ; *Willis on Trustees,* 134, 162 ; 5 *Mad. Rep.* 425 ; *Hill on Trustees,* 485, 495 ; 2 *Story's Eq. Jur.,* page 369, 378 ; 3 *Mylne & Kean,* 411.

THE CHANCELLOR. The case is with the complainants. A reference will be ordered, with instructions to charge the estate of James P. Quick with the principal of the trust fund, and with the interest thereon, and credit him with a reasonable rent for the property while it was occupied by Mary Fisher and her family ; allowing all other proper credits for payments to Mary Fisher.

Order accordingly.